PAUL A. BONIN, Judge.
 

 | TPahan Novelties & Co., L.L.C. and JMS Global, L.L.C. appeal the trial court judgment dismissing with prejudice their action against defendant, Arizona Central Insurance Agency (“ACIA”). After considering the evidence introduced at the hearing to confirm a preliminary default, the trial judge concluded that neither Da-han nor JMS met its burden of proof against their insurance agent. Upon our review for manifest error, we conclude that the trial judge did not commit error in deciding that Dahan and JMS failed to establish a prima facie case against ACIA. However, because there is no legal authority for the trial court to dismiss the lawsuit at the close of the plaintiffs’ case in a hearing to confirm a default judgment, we reverse and remand the matter to the trial court. We explain our decision below.
 

 I
 

 “A judgment of default must be confirmed by proof of the demand sufficient to
 
 *132
 
 establish a prima facie case.” La. C.C.P. art. 1702 A;
 
 see Arias v. Stolthaven New Orleans, LLC,
 
 08-1111, p. 7 (La.5/5/09), 9 So.3d 815, 820.
 
 See also Goldfinch v. United Cabs, Inc.,
 
 08-1447, p. 4 (La.App. 4 Cir. 5/13/09), 13 So.3d 1173, 1177. “[T]he plaintiff must present competent evidence that convinces the |2court that it is probable that he would prevail at trial on the merits.”
 
 Arias, supra.
 
 In this case, the trial court was not convinced.
 

 “In reviewing default judgments, the appellate court is restricted to determining the sufficiency of the evidence offered in support of the judgment.”
 
 Arias, supra
 
 p. 5, 9 So.3d at 818. “This determination is a factual one governed by the manifest error standard of review.”
 
 Id.
 

 We, of course, review factual determinations made by the trial court using the manifest error or clearly wrong standard of review.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). Reversing the trial court’s factual findings requires that we find that no reasonable factual basis exists for the trial court’s findings and that the findings are clearly wrong or “manifestly erroneous” according to the record.
 
 Mart v. Hill,
 
 505 So.2d 1120, 1127 (La.1987). “[Wjhere two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.”
 
 Stobart v. State, Through Dept. of Transp. and Dev.,
 
 617 So.2d 880, 883 (La.1993). The trial court has a “better capacity to evaluate live witnesses.”
 
 Canter v. Koehring Co.,
 
 283 So.2d 716, 724 (La.1973). Thus, if the trial court’s holding was reasonable, the holding was not manifestly erroneous.
 
 Norfleet v. Lifeguard Transp. Serv., Inc.,
 
 2005-0501, (La.App. 4 Cir. 5/17/06), 934 So.2d 846.
 

 II
 

 Dahan and JMS are separate and unrelated business entities which were engaged in the retail sale of various novelty items from kiosks in a suburban mall. Under the terms of their lease agreements with the mall owner, they were required to carry general liability insurance. The mall owner directed them to ACIA, an insurance agency located in Arizona for their insurance. Separately, they forwarded their lease agreements to the agent and requested (by telephone) “full coverage.” A written application for insurance was not executed. ACIA procured [¡¡commercial liability insurance through Ohio Casualty Insurance Company and on October 17, 2001 issued certificates of liability insurance to Dahan, JMS, and the mall owner. No policies were issued to or received by Dahan and JMS at that time. But they began to operate their businesses in the shopping mall.
 

 About two months later a water pipe burst in the storage room at the mall in which the inventories of the businesses were stored. This caused substantial water damage to the merchandise. Dahan and JMS submitted claims to the insurance company for their losses. The insurer, citing the provisions of the liability policy, denied coverage for loss of inventory or loss of business revenue.
 

 Dahan and JMS filed suit against the agency, the insurance company, and the mall owner.
 
 [1]
 
 With respect to the insurance agency, the petition alleged negligence in: (1) failing to provide full coverage for plaintiffs’ commercial property; (2) failing to notify plaintiffs that they did not have sufficient coverage for their commercial property; (3) failing to investigate whether plaintiffs had sufficient insurance coverage; and (4) failing to advise plain
 
 *133
 
 tiffs that they did not have sufficient insurance coverage. The petition further alleges that the agency knew, or had reason to know, that plaintiffs would rely on their false representations and assurances that the policies provided full coverage for plaintiffs’ commercial property. After service on the insurance agent by the Long-Arm Statute,
 
 [2]
 
 a preliminary default was entered against ACIA.
 
 [3]
 

 At the confirmation of default hearing, Rotem Dahan, owner and operator of Da-han, and Moshe Shargian, owner and operator of JMS, each testified that in a telephone call to an unidentified representative of the insurance agency, he requested full coverage required by the lease as well as full coverage for loss of | inventory and loss of business income. They both acknowledged receiving the certificates of insurance in October 2007.
 

 It is undisputed that the certificates of insurance indicate only liability coverage and do not indicate coverage for loss of inventory and/or loss of business income.
 

 In her written reasons for judgment, the trial judge explained that the insurance agency, having received copies of the leases setting forth the insurance requirements for liability insurance, did comply with the request for “full coverage” for those requirements. As the trial judge wrote, “[tjhese types of policies are designed to protect the [mall] owners from anything that occurs due to plaintiffs’ fault. However, they do not cover plaintiffs’ inventory if the inventory itself is damaged.” Moreover, the trial judge found that if the insurance agency had not complied with their requests, Dahan and JMS had had ample time before the loss to review the certificates and notify the agency of their dissatisfaction.
 

 Dahan and JMS argue on appeal that the trial judge ignored the “uncontrovert-ed” testimony in order to find that they had received the “full coverage” they requested. We disagree.
 

 Ill
 

 Louisiana law imposes a fiduciary duty on insurance agents in their dealings with the insured in certain instances.
 
 Taylor v. Sider,
 
 99-2521 (La.App. 4 Cir. 5/31/00), 765 So.2d 416. An insurance agent who undertakes to procure insurance for another owes an obligation to his client to use reasonable diligence in attempting to place the insurance requested and to notify the client promptly if he failed to obtain the requested insurance.
 
 Karam v. St. Paul Fire & Marine Ins. Co.,
 
 281 So.2d 728, 730 (La.1973). The client may recover from the agent the loss he sustains as a result of the agent’s failure to procure the desired coverage if the actions of the agent warranted an assumption by the client that he was properly | ^insured in the amount of the desired coverage.
 
 Id. See also Roger v. Dufrene,
 
 613 So.2d 947, 949 (La.1993). To determine whether such an assumption by the insured is warranted, the following three-part test is applied:
 

 A plaintiff may recover for loss arising from the failure of an insurance agent to obtain insurance coverage if plaintiff can establish three elements: (1) an undertaking or agreement by the agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) that actions of the agent warranted
 
 *134
 
 an assumption by the client that he was properly insured.
 

 Heidingsfelder v. Hibernia Insurance, L.L.C.,
 
 2009-0753, pp. 5-6 (La.App. 4 Cir. 11/18/09), 25 So.3d 976, 979.
 

 In the present case, Dahan and JMS allege that the insurance agency was negligent in failing to procure the requested coverage. In support of this assertion, plaintiffs rely solely on their trial testimony that they discussed and requested full coverage pursuant to the lease
 
 and
 
 full coverage for business losses with the insurance agency representative. Although no opposing testimony was presented, it is evident from the written reasons for judgment that the trial court made a factual determination that plaintiffs only requested the full coverage required by the lease, thus finding that plaintiffs did not show that ACIA breached a duty by failing to procure coverage for loss of inventory and/or loss of business revenue.
 

 We note that in response to the trial judge’s questioning, Mr. Shargian testified that, other than the lease, ACIA never requested any business records in determining coverage. The implication of the inquiry being, if business losses and inventory were to be covered, documentation to that effect would have been requested. We also note that Mr. Dahan and Mr. Shargian are sophisticated businessmen, not new to the retail business.
 
 [4]
 
 Both testified that they have operated ^numerous kiosks in malls across the State of Louisiana. Based on the record before us and granting deference to the trial court for any credibility determinations made in connection with its ruling, we cannot say that the trial court was clearly wrong.
 

 Plaintiffs also allege that ACIA was negligent in failing to advise plaintiffs that they did not have sufficient coverage. However, this Court has explicitly held that “insurance agents do not have an independent duty to identify their clients’ needs and to advise them regarding whether they may be underinsured.”
 
 Heidingsfelder,
 
 2009-0753, p. 4, 25 So.3d at 978.
 

 Finally, it is well settled in our jurisprudence that an insured is charged with the primary responsibility to read the policy.
 
 Isidore Newman School v. J. Everett Eaves, Inc. and Westport Insurance Corp.,
 
 2009-2161, p. 6 (La.7/6/10), 42 So.3d 352, citing
 
 City Blueprint & Supply Co., Inc. v. Boggio,
 
 2008-1093 (LaApp. 4 Cir. 12/17/08), 3 So.3d 62. As properly pointed out by the trial court in this case, Dahan and JMS received the certificates of insurance in October 2007, and had ample time (before the loss occurred in December 2007) to notify ACIA if they did not receive the requested coverage. Both Mr. Dahan and Mr. Shargian continue to obtain insurance for their businesses with ACIA: “that’s usually the company that we purchase insurance from for those particular carts.”
 

 In
 
 Dobson v. Allstate,
 
 06-02521 06-1097, 06-1064, 06-1255, 06-1734, 06-1585, 2006 WL 2078423 (E.D.La.7/21/06), the court found that the agent had no duty to “spontaneously identify a client’s needs and advise him as to whether he is under-insured or carries the correct type of coverage.” Rather, as the Louisiana Supreme Court stated in
 
 Newman, supra,
 
 it is the client’s responsibility or duty, not the
 
 *135
 
 agent’s, to determine the amount of coverage needed and advise the agent of those needs, and upon receiving the policy of insurance the client has a duty to review the policy to ascertain that his needs are met.
 
 Newman, supra,
 
 09-2161 at p. 5, 42 So.3d at 358.
 
 See also Frischhertz v. Lexington Ins. Co.,
 
 06-5676, 2006 WL 3228385 (E.D.La.11/3/06).
 

 The trial judge was not clearly wrong in finding that Dahan and JMS did not meet their burden of proof or establish a prima facie case against ACIA, and this finding is reasonable.
 

 IV
 

 We turn now to an explanation of our holding that dismissal with prejudice of a lawsuit at the close of plaintiffs submission of evidence at a hearing to confirm a default judgment is not authorized. As noted earlier, Dahan and JMS obtained a judgment of default against ACIA.
 
 See
 
 La. C.C.P. arts. 1701 A and 1843 (“A judgment by default is that which is rendered against a defendant who fails to plead within the time prescribed by law.”). This judgment of default is sometimes called a “preliminary default.”
 
 See
 
 Frank L. Maraist, 1 Civ. Law Treatise: Civil Procedure § 12:3. ACIA filed no pleadings after the entry of the default judgment, and Dahan and JMS proceeded to a confirmation of the default judgment.
 
 See
 
 La. C.C.P. art. 1702.
 

 A judgment by default is to be distinguished from a judgment of dismissal.
 
 See
 
 La. C.C.P. art. 1844 (“A judgment of dismissal with or without prejudice shall be rendered and the effects thereof shall be regulated in accordance with the provisions of Article 1671 through 1673.”). The judgment of default is against the defendant,
 
 see
 
 La. C.C.P. arts. 731-743, whereas the judgment of dismissal is against the plaintiff,
 
 see
 
 La. C.C.P. arts. 681-700.
 

 Articles 1671-1672 regulate voluntary and involuntary dismissals. The trial court, at the conclusion of the confirmation hearing did not confirm the judgment of default (which would have been a judgment against the defendant) but instead granted a judgment of dismissal (which was a judgment against the plaintiffs). The trial court granted the dismissal effectively on its own motion.
 

 |sOur procedural law confers upon a trial court only very limited authority to dismiss a lawsuit on its own motion. A trial court on its own may notice, for example, peremption or the failure to disclose a cause of action and dismiss the lawsuit.
 
 See
 
 La. C.C.P. arts. 927 B and 934. Also, when no party appears for trial, the trial court may dismiss an action “on its own motion.” La. C.C.P. art. 1672 A(2). But these authorized circumstances do not apply in this case. Except in such circumstances, a trial judge’s power to dismiss cannot be exercised on his own motion, but requires the application of a party.
 

 The motion of the party plaintiff is required for a voluntary dismissal.
 
 See
 
 La. C.C.P. art. 1671;
 
 see also Spencer v. Children’s Hospital,
 
 432 So.2d 823, 824-825 (La.1983). Because Dahan and JMS did not apply for the dismissal, voluntary dismissal is inapplicable.
 

 For an involuntary dismissal, in order for a trial court to dismiss a lawsuit, a party defendant must move for such relief. In the ordinary contested case, such relief may be sought in the exceptions or in the answer.
 
 See
 
 La. C.C.P. arts. 924 and 1003. When a plaintiff fails to appear for trial, the court may render a judgment dismissing the action “upon application of any party.” La. C.C.P. art. 1672 A(l). Moreover, La. C.C.P. art. 1672 B provides another circumstance illustrative of the
 
 *136
 
 limited or resteicted authority of a trial judge to dismiss a lawsuit:
 

 In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence,
 
 any party,
 
 without waiving his right to offer evidence in the event the motion is not granted,
 
 may move for a dismissal of the action as to him
 
 on the ground that upon the facts and law, the plaintiff has shown no right to relief.
 
 The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party
 
 or may decline to render any judgment until the close of all the evidence, (all emphasis added)
 

 “The article [La. C.C.P. art. 1672 B] is clear that the court may not dismiss an action on its own motion, but only upon application of either party.”
 
 Koch v. Koch,
 
 97-1600, p. 3 (La.App. 4 Cir. 4/22/98), 714 So.2d 63, 65. In
 
 Williams v. Brooks
 
 the third circuit reversed the trial court which, after a defendant in the trial began to present its evidence, on its own motion dismissed the plaintiffs lawsuit; the court ruled that
 

 La.Code Civ. P. art. 1672(B) grants to
 
 any party
 
 the right to move for dismissal after the plaintiff has completed the presentation of his/her evidence. However, the provision does not authorize the trial court to grant a dismissal on its own motion, (emphasis in original)
 

 Williams v. Brooks,
 
 96-1709, p. 3 (La.App. 3 Cir. 4/30/97), 693 So.2d 302, 304. “The phrase
 
 any party
 
 does not include the court because the court is not a party to the action.”
 
 Wooley v. Amcare Health Plans of Louisiana, Inc.,
 
 06-1146, p. 14 (La.App. 1 Cir. 1/17/07), 952 So.2d 720, 729 (emphasis in original). Moreover, Judge Amy in his concurring opinion in
 
 Williams
 
 pointed to the jurisprudential statement from our court in
 
 Spencer v. Children’s Hospital,
 
 419 So.2d 1307 (La.App. 4th Cir.1982), which was approved by the Supreme Court, “that the trial judge has no power to dismiss a case on his own motion.”
 
 Williams, supra
 
 p. 5, at 305 (Amy, J., concurring);
 
 see also Spencer,
 
 432 So.2d at 824.
 

 Because there is no other party present at the confirmation hearing to move for dismissal, a trial court is effectively prevented from dismissing a plaintiffs case on the court’s own motion at the close of the plaintiffs evidence at a confirmation hearing. Therefore, the trial court’s rendering on its own motion a judgment of dismissal against the plaintiffs at the conclusion of the conclusion of their evidence is error.
 

 Though these circumstances are rare in the reported decisions, we note that our predecessor court ruled that the trial judge erred when she on her own motion dismissed the plaintiffs suit at the close of the confirmation hearing.
 
 See Romero v. Melancon,
 
 72 So.2d 570, 571 (La.App.Orleans 1954). The
 
 Romero
 
 court | inconcluded that the “plaintiff should have been afforded the opportunity of proving with legal certainty his demands against the defendant, and ... the case should be remanded to the city court.”
 
 Id.
 

 By remanding this matter to the trial court for further proceedings, we treat a confirmation hearing in which the trial court concluded that the evidence was insufficient to support a judgment in favor of the plaintiff the same as when an appellate court concludes that the evidence was insufficient although the trial court had found the evidence sufficient.
 
 See Arias,
 
 08-1111, p. 17, 9 So.3d at 825, and
 
 Goldfinch,
 
 08-1447, p. 11, 13 So.3d at 1181.
 

 If a trial court is not convinced that a plaintiff has made a prima facie case at the confirmation of the judgment of default hearing, it should refuse to confirm
 
 *137
 
 the default judgment, but not dismiss the case.
 
 See Jacobs v. Jacobs,
 
 365 So.2d 25, 26 (La.App. 4th Cir.1978).
 
 [5]
 

 DECREE
 

 The trial court judgment rendered on February 4, 2010, in favor of Arizona Central Insurance Agency and against Dahan Novelties & Co., L.L.C. and JMS Global, L.L.C. dismissing their case is reversed. We remand to the trial court for further proceedings.
 

 REVERSED AND REMANDED.
 

 [1]
 

 . The claims against the insurance company and the mall owner are not before us.
 

 [2]
 

 .
 
 See
 
 La. C.C.P. art. 1261 and La. R.S. 13:3204.
 

 [3]
 

 .
 
 See
 
 La. C.C.P. art. 1701.
 

 [4]
 

 . Mr. Dahan testified that he has a retail business, a cart in the mall, a cab company and transportation business, and real estate. Mr. Shargian testified that he is a real estate developer and was in the kiosk business, stating, "My company was the biggest company in 2007 that was operating kiosks in malls all over Louisiana.” He had 27 kiosks in seven malls.
 

 [5]
 

 . A judgment refusing to confirm a default judgment is an interlocutory judgment and a party aggrieved by a trial court’s refusal to confirm a default may apply for supervisory review.
 
 See
 
 La. C.C.P. art. 2201;
 
 Jacobs,
 
 365 So.2d at 26, n. 2.